D14AAZDOS               Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          07 CR 440 (PGG)

5   VLADIMIR ZDOROVENIN,

6            Defendant.

7   ------------------------------x

8                                        New York, N.Y.
                                         January 4, 2013
9                                        2:45 p.m.

10
    Before:
11
                    HON. PAUL G. GARDEPHE,
12
                                         District Judge
13

14                      APPEARANCES

15  PREET BHARARA
        United States Attorney for the
16      Southern District of New York
    JAMES PASTORE
17      Assistant United States Attorney

18  SABRINA SHROFF
        Attorney for Defendant Zdorovenin
19

20

21  ALSO PRESENT:  YANA AGOUREEV, Russian Language Interpreter
    ANDREW TAPUTZ, Russian Language Interpreter
22

23

24

25

1          (Case called)

2          MR. PASTORE:  Jim Pastore, for the United States.

3   Joining me at counsel table is a special agent Andy Dodd of the

4   Federal Bureau of Investigation.

5          MS. SHROFF:  Good afternoon, your Honor.

6          For the defendant, Sabrina Shroff, from the Federal

7   Defenders Office.  My client is seated to my right.

8          THE COURT:  All right.  This matter is on my calendar

9   for purposes of sentencing.  I've read the presentence report

10  dated May 9, 2012.  I've read Ms. Shroff's amended sentencing

11  submission dated December 26 and her reply submission dated

12  January 1st along with the letters from the defendant's family

13  and friends.  I've also read the government's amended

14  sentencing submission dated December 30th.

15         Ms. Shroff, have you read the presentence report and

16  its recommendation and discussed it with your client?

17         MS. SHROFF:  I have, your Honor.

18         THE COURT:  Mr. Zdorovenin, has the presentence report

19  and its recommendation been read to you in Russian and have you

20  discussed it with Ms. Shroff?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  All right.  Ms. Shroff, do you have any

23  objections to the factual portions of the presentence report?

24         MS. SHROFF:  No, your Honor.  I mean other than the

25  way I've clarified them in my sentencing submission, I don't

D14AAZDOS                    Sentence

1    have any which I seek to amend.

2              THE COURT:  Well, you had raised objections to three

3    paragraphs in the report.  I think from the perspective of

4    whether your client had actually committed the conduct it's

5    discussed.  And those paragraphs deal with the theft of credit

6    card numbers and the surreptitious insulation of a computer

7    virus program on people's computers, transmission of data from

8    those computers to your client's son, as well as the operation

9    of three websites and then the illegally accessing customer's

10   brokerage accounts to use them to buy and sell securities.  And

11   I think your point was that that was all conduct that the son

12   did.

13             MS. SHROFF:  That's right, your Honor.

14             THE COURT:  All right.  Does the government dispute

15   that?

16             MR. PASTORE:  Well, your Honor, with respect, I

17   believe it's Paragraphs 18 through 20, that we're discussed in

18   the --

19             THE COURT:  Yes.

20             MR. PASTORE:  I'll note that at least in the

21   government's reading of those it does distinguish between

22   actions taken by Koreal on the one hand and Vladimir on other.

23   For example, in Paragraph 18 it is says Koreal Zdorovenin used

24   a computer virus program that was surreptitiously installed on

25   to the victim's computer.

1          THE COURT:  Sometimes it distinguishes and sometimes

2     it doesn't.

3          MR. PASTORE:  Correct.

4          THE COURT:  So, for example, the first sentence says

5     they both or could be read to say that they both purchased

6     stolen credit card numbers.  Is that true, that they both did

7     it?

8          MR. PASTORE:  The government's intention is, yes, your

9     Honor, that both of them did it in participating in this

10    conspiracy.  In terms of how the presentence report is drafted

11    right now, I don't think that there's any factual dispute

12    between the parties because my understanding is that these

13    actions were undertaken as part of the joint conspiracy.

14         THE COURT:  All right.  So are you content then with

15    these paragraphs as they currently are written, Ms. Shroff?

16         MS. SHROFF:  Well, I am not -- I don't seek to modify

17    the recitation in the PSR largely because it's not relevant to

18    my client's designation or anything that has come to follow.  I

19    think what Mr. Pastore is saying when he says it's jointly

20    undertaken activity is that my client was aware.  I don't think

21    the government is staying that my client had that particular

22    skill or savvy.  And to the extent they're staying that, I

23    would disagree with that but I think that's -- I think I've

24    repeated myself that you are probably tired of hearing that

25    refrain already but --

1      THE COURT:  Well, understand that your client from a

2  conspiracy perspective would be liable for foreseeable acts

3  that his son committed in furtherance of the conspiracy.  I

4  understand that.  And I suppose one could read these paragraphs

5  that way but I wanted to give you an opportunity, if you

6  wished, to request modification to the extent the paragraphs

7  could be read to suggest that your client actually did these

8  things personally.

9      MS. SHROFF:  Your Honor, I think that the PSR sets

10  forth the defense's objections to those.  But I mean they're in

11  the document, so I don't seek a word-for-word modification.

12      THE COURT:  All right.

13      MS. SHROFF:  But I do know that the presentence report

14  notes our objections that Vladimir did not have those skills

15  nor the technology.

16      THE COURT:  Right.  I think it's already been very

17  clear in this case, certainly, it's been very clear to me that

18  the technical knowledge here was possessed by the son and not

19  by the father and the government has never argued to the

20  contrary.  I think that's very, very clear.

21      Mr. Pastore, does the government have any objections

22  to the factual portions of the presentence report?

23      MR. PASTORE:  No, your Honor.

24      THE COURT:  Then I adopt the findings of fact as

25  they're set forth in the presentence report.  Although, I am

1    not required to impose sentence in accordance with the

2    sentencing guidelines, I am required to consider the

3    recommended range under the guidelines.

4          Here the probation department determined that Mr.

5    Zdorovenin's base offense level is seven under Section 2B1.1A1

6    which addresses fraud.  The probation department imposed a 14

7    level increase because the loss amount was between four hundred

8    thousand and $1 million.

9          The probation department further imposed a two level

10   increase because the involved ten or more victims.

11         A further two level increase was imposed because a

12   substantial part of the offense was committed outside of the

13   United States.

14         An additional two level increase was imposed because

15   the defendant was convicted under Title 18 U.S.C. Section 1030

16   which deals with computer fraud.

17         Because Mr. Zdorovenin demonstrated acceptance of

18   responsibility, the probation department granted a three level

19   reduction yielding an adjusted offense level of 24.

20         The probation department determined that the defendant

21   has no criminal history and therefore he falls under criminal

22   history category one.

23         Offense level 24, criminal history category one yields

24   a guidelines range of 51 to 63 months imprisonment.

25         Ms. Shroff, does the defendant wish to raise any

1   objections to the accuracy of the guidelines calculations as

2   they're set forth in the presentence report?

3           MS. SHROFF:  No, your Honor.  They comport with the

4   plea agreement and we have no objection.

5           THE COURT:  All right.  Mr. Pastore do you have any

6   objections to the guidelines calculations set forth in the

7   presentence report?

8           MR. PASTORE:  No, your Honor.

9           THE COURT:  Based on my independent evaluation of the

10  sentencing guidelines, I accept the calculations set forth in

11  the presentence report.  Accordingly, I find that the offense

12  level is 24.  The criminal history category is one and the

13  recommended range under the guidelines is 51 to 63 months

14  imprisonment.

15          I'll hear from you, Ms. Shroff, as to an appropriate

16  sentence.

17          MS. SHROFF:  Your Honor, I think that on behalf of

18  Mr. Zdorovenin we have briefed pretty much why we think a

19  sentence of 24 months would be a sufficient sentence and not

20  greater than necessary to achieve the goals of sentencing.

21          Putting aside the personal characteristics of my

22  client, I would like -- I don't want to repeat everything I've

23  said in my letter but I do wish to reiterate that the loss

24  guidelines -- and I could have provided for the Court as we've

25  done in other loss cases from our office -- a computation of

how the loss guidelines have changed since Bernie Evers got

elected and when Congress decided that the probationary

sentences being handed down for white collar defendants were

not achieving the goals they had set out to achieve and then

thought the best way to proceed with white collar defendants

was to impose short limited incarceratory sentences because

they thought that that would best achieve the goals of

sentencing.

The government in its reply seems to suggest, I

believe they site to Simmons in one other case and suggesting

that incarceration does, in fact, deter conduct.  I have to, I

have to, I have to side with what Judge Rakoff repeatedly says,

not just about the loss guidelines but also about this notion

of what general deterrence is.  General deterrence although

it's recited as a factor in the sentencing guidelines, there's

absolutely no empirical evidence that it works.

More importantly, it assumes that somebody out there

in either Russia or Malaysia or whatever is actually paying

attention to a judge in the Southern District imposing a

sentence.  And then on top of that, drawing from that the

lesson that they really ought not to commit the crime because

they will similarly be punished and thereby general deterrence

is achieved.

I focus on this because in terms of loss cases there

is not a judge -- I shouldn't say there is not a judge because

1   I don't know of every loss case -- but the recent loss cases

2   and I believe I've cited them for the Court, including the case

3   of Rajat Gupta, where he got a sentence of 24 months;

4   Mr. Rajaratnam, where he got a sentence far below the guideline

5   range by Judge Holwell; the sentence of Mr. Adelson and

6   Mr. Parish; one by Judge Block; and again by Judge Rakoff; the

7   sentence imposed on Mr. Bristol by Judge Batts; the sentence

8   imposed by Judge Koeltl on Mr. Nadel.  All of these show a

9   pattern and surely the pattern suggests something.  And the

10  pattern suggests that the unusually high guidelines are not

11  empirically sound and therefore the Court should not simply

12  adopt those guidelines in the way it would other guidelines

13  ranges.

14          The personal characteristics about my client all bear

15  in his favor.  They're, certainly, sympathetic ones.  The money

16  does not seem to have flowed to him.  The government has no

17  evidence that he personally profited from his money.  His son

18  remains in the wind.  His son has never come forward to help

19  out the father.  The government doubts whether my client's

20  story about the familial break-up is true but the government

21  has not a scintilla of evidence to take issue with that story

22  other than to say that he sounded like a knowledgeable guy when

23  he was talking on the tapes and they do cite to the tapes.  And

24  even though they've withdrawn the attachments, the tapes are

25  very much cited by government's submission and that's OK.  They

1    can cite them.

2            But I don't think the government is going to stand up

3    and say that those tapes are not replete with phrases such as,

4    "I don't know".  "Ask Curel".  "I don't know".  "Curel sent

5    me".  Curel is the one who finds, not just the confidential

6    cooperator in the end but also the precursor to the cooperating

7    witness.  Curel is actually physically in Cypress when the

8    meetings take place.  There is no indication on any of these

9    conversations that Curel is not just a major participant in

10   this but Curel is the guy to whom the phrase "Curel knows" or

11   "Curel told me" or "Curel should be consulted by".

12           And I don't want to be perceived as saying you know my

13   client had nothing to do with anything.  If he had nothing to

14   do with anything there would not have been a guilty plea.  He's

15   pled guilty.  The question really is just how far his reach

16   was?

17           Other than that, I don't have anything more to tell

18   the Court but I think all those facts put together do suggest

19   and call for a departure from the guidelines range and sentence

20   of 24 months.  I remind the Court also that Mr. Zdorovenin will

21   be deported.  I remind the Court that he spent a substantial

22   amount of time in Switzerland and he should be credited that

23   time from whatever sentence is imposed here because he wasn't

24   incarcerated there on any open matter either in the Southern

25   District or in any other country, so that time should be

1    credited for him.

2              And finally there has to be some inference drawn from

3    the fact of his age and the fact that this is his first

4    offense.  He is a true category one.  He has zero criminal

5    history points.  There is no other crime that he has committed

6    that was 20 years old for which he is not getting a criminal

7    history computation.  This is man who really has a criminal

8    history.

9              All of those facts put together, your Honor, should

10   lead the Court to depart and vary from the guidelines range and

11   impose a sentence of 20 months.  This would be in keeping with

12   the majority of the well respected jurists sitting in this

13   courthouse as well as the courthouse across the street.

14             Unless the Court has any more questions that's what I

15   have to say on behalf of my client.

16             THE COURT:  All right.  Mr. Zdorovenin, is there

17   anything you'd like to say before the Court imposes sentence?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  You can be seated.  And pull the mic close

20   to you if you want.

21             (Pause)

22             THE DEFENDANT:  Thank you.

23             Your Honor, I committed a crime.  I understand my

24   responsibility in regards to this crime.  I am not withstanding

25   the motivations that I had to commit this crime, I should say

1    that they cannot justify this crime and make it not a crime.  I

2    am very sorry, your Honor, today for what I have committed not

3    because of the crime, your Honor, only, but also because of the

4    fact that I let my son participate in this offense.  I think

5    that this is my biggest crime.  I feel complete pain because I

6    did what I did with my family and today I want to say how sorry

7    I am and that I am guilty of this crime that I committed.  And

8    I want to say sorry to those people to whom I caused to suffer

9    losses and how sorry I am to those who were forced to

10   investigate this offense.

11           And of course I am to blame where my family is

12   concerned.  All my life, your Honor, from my childhood I was

13   raised as a protector of the family.  I live in a country and

14   continue to live in a country that went through significant

15   changes in the lives of people there and not all of those

16   changes were positive.  But I tried in this time to protect my

17   family, to give my sons a good education.  But as a result what

18   happened?  I did everything contrary to my intentions and today

19   at home my close ones, my loved ones are forced to go through

20   this tragedy together with me.  My old mother, my elderly

21   mother who is afraid that she will never see me again, my young

22   son who is five who is growing up without my support and my

23   love.  You know, your Honor, how kids grow up so fast and how

24   important it is for the children to have both of their parents

25   when they're growing up, both parents who love them and take

1    care of this them.

2            Your Honor, before you render a sentence and punish me

3    I want to ask you for leniency for my family because they're

4    forced to be punished together with me, unfortunately and they

5    will suffer more than I will.  And this lesson that I have

6    learned here will be with me for the rest of my life and I am

7    completely sure I will never repeat such mistakes.  Thank you,

8    your Honor, for your attention.

9            THE COURT:  Mr. Pastore, is there anything you want to

10   say?

11           MR. PASTORE:  Most of what the government wants to say

12   is contained in its sentencing submission.  Your Honor,

13   primarily the defendant seeks a below guidelines sentence on

14   the basis of his motivation and a general attack on the idea of

15   deterrence.  As the government noted in its sentencing

16   submission, whatever the motivation, the crime was a serious

17   one.  And as even now the defendant candidly admits he played a

18   significant role in that crime.  And for the reasons set forth

19   in our sentencing submissions we don't believe that a wholesale

20   attack on general deterrence is really important in any case.

21   But in particular, in this case the guidelines seem

22   commensurate with the defendant's activities.  There are 51 to

23   63 months.  And in most of the cases that the defendant cites

24   the guidelines were substantially higher and that's where we

25   see a lot of comments made by the judges about the guidelines

1    ranges there.

2         Unless the Court has questions, the government is

3    prepared to rest on its submission.

4         THE COURT:  All right.  In deciding upon an

5    appropriate sentence, I have considered all of the factors

6    listed in Title 18 U.S.C. Section 3553(A), including the nature

7    and circumstances of the offenses to which the defendant

8    pleaded guilty, his personal history and characteristics, the

9    need for the sentence imposed to reflect the seriousness of the

10   offenses, to promote respect for the law, to provide just

11   punishment and to afford adequate deterrence.

12        I'll begin with the nature and circumstances of the

13   offenses.

14        The defendant pleaded guilty to a Section 371

15   conspiracy, the objects of which involved, among other things,

16   wire fraud.

17        He also pleaded guilty to one substance count of wire

18   fraud.

19        The defendant's co-conspirator was his son, Curel.

20   The defendant and his son played difficult roles in the fraud

21   conspiracy.  His son's role included obtaining stolen credit

22   card numbers either by purchasing them or by using a computer

23   virus program surreptitiously installed on a victim's computer

24   to obtain the victim's credit card information and personal

25   financial information.  The virus permitted Curel to obtain the

victim's credit card and also other financial information as

the victims typed that information into their computers.

This conduct took place in Russia but through the

Internet it was possible to victimize United States citizens

both in New York and elsewhere.  The crimes took place between

March of 2004 and March 2005 but the defendant was not arrested

until 2011 when he traveled to Switzerland.  The defendant's

son is a fugitive.

Curel charged purchases on the stolen credit card

numbers and hacked into victim's brokerage accounts and used

those accounts to manipulate stock prices for personal gain.

The fraudulent proceeds were laundered through websites that

were reported to be legitimate businesses.  The activities of

the defendant and his son caused losses of between four hundred

thousand and $1 million.  While Curel was responsible for the

technical aspects of the fraud, the defendant was responsible

for providing bank accounts which could be used to accept the

fraudulent proceeds that Curel was generating.

The defendant discussed the details of his movements

of the fraud proceeds during his four hour meeting in Cypress

with someone who he thought was a potential co-conspirator but

who in reality was a government cooperator.

The defendant also permitted his son to use an

Ameritrade account held by the defendant's company, Rim

Investment Management Limited, to purchase and sell the

1    securities that Curel traded with the stolen accounts.  While

2    it is clear that the defendant understood that his son was

3    using the Internet and the stolen credit card numbers to commit

4    fraud, there is no evidence that he understood all the

5    technical details.  To the contrary, it is undisputed that the

6    technical aspects of the fraud scheme were handled by the son.

7    It seems clear that the fraudulent scheme was devised by the

8    son.

9          The government has also not rebutted the defendant's

10   claim that he did not benefit financially from the fraud.  In

11   papers the defendant has argued that he should be treated less

12   severely because his criminal acts were not motivated by greed,

13   but rather out of a desire to repair his relationship with his

14   son which had been disturbed or frayed after the defendant

15   divorced Curel's mother.

16         In my view and as the defendant himself said this

17   afternoon, assuming that the motive was to repair the

18   relationship with the son, in my judgment it does not mitigate

19   the defendant's culpability.  When his son first approached him

20   about participating in the fraud the defendant's response as he

21   himself indicated this afternoon should have been "no" quickly

22   followed by an attempt to persuade his son to stop using his

23   considerable technical abilities to commit fraud.  The

24   defendant was not helping his son in any useful or productive

25   way by agreeing to assist him in handling the fraud proceeds

1   that the son was generating.

2           With respect to the defendant's personal history and

3   characteristics, he is 55 years old and was born and raised in

4   Russia.  His father worked for the UN.  His mother worked for a

5   railroad company.  He was raised primarily by grandparents.  He

6   has two children by an ex-wife, including Curel, his

7   co-conspirator in this case.  As I noted, the defendant

8   divorced Curel's mother and remarried and has a four year old

9   son with his current wife.  The family lives in Moscow.

10  Mr. Zdorovenin has a bachelor's, masters, PhD all in geology

11  from various institutions in Moscow.  From 2005 until his

12  arrest he supported himself by lecturing on geology at various

13  universities in Russia and by assisting companies who wanted

14  him to review various geological reports.  Prior to that,

15  during the period between 1998 and 2004 the defendant served as

16  a business director for his company Rim Investment Management

17  Limited in Russia.  The defendant has no criminal record.  His

18  involvement in this fraud scheme is difficult to reconcile with

19  the rest of his life which otherwise seems to be admirable.

20          The guidelines recommended a sentence of 51 to 63

21  months.  The probation department has recommended a sentence of

22  51 months in prison.  The government seeks a guidelines

23  sentence.  The defense seeks a sentence of 24 months.

24          I conclude that a variance from the guideline is

25  called for.  The defendant is now 55 years old.  In my judgment

1    he presents little to no risk of recidivism both because of his

2    age and the fact that he has no criminal record.  I believe

3    that his involvement in the fraud scheme was aberrational and

4    was undoubtedly at the volition of his son.

5         I must also consider the fact that there is no

6    evidence that the defendant benefited in any way from the

7    fraud.  And in most fraud cases defendants either benefit

8    financially from the fraud or would have benefited financially

9    in some fashion were the fraud successful.  There is know

10   evidence that the defendant was involved any of the technical

11   aspects of the fraud or that he even understood how his son was

12   obtaining the stolen credit card information.  If there were

13   evidence that the defendant misused technical knowledge or

14   abilities to commit the fraud here, I would likely not

15   entertain any variance from the guideline range.  That is not

16   the case.

17        Having said all that, the defendant facilitated what

18   in my judgment was a serious fraud with international

19   ramifications.  Without bank accounts to put the fraud proceeds

20   in, the son would not have been able to reap the benefit of his

21   fraudulent activities.  And there is no question that the

22   defendant knew that his son was using the Internet to steel

23   from people thousands of miles away and that he chose to

24   facilitate that activity.  And in the amounts in question are

25   not inconsequential.

1      With all of these facts and circumstances in mind I'll

2  now describe the sentence I intend to impose and then I'll ask

3  the parties if there's anything further they wish to say.

4      With respect to imprisonment, I intend to impose a

5  sentence of 36 months imprisonment.  I conclude that this

6  amount of imprisonment is sufficient to satisfy all the

7  purposes of sentencing as set forth in Section 3553(A).

8      I do not intend to impose is a period of supervised

9  release because it is my expectation the defendant will be

10  deported immediately after serving the sentence.

11      I do not intend to impose a fine because I find the

12  defendant lacks the ability to pay the fine.  I am required to

13  impose a $200 special assessment.

14      I have been handed a Consent Order of Forfeiture.  It

15  is my intention to sign the order.

16      Is the government seeking restitution?

17      MR. PASTORE:  Your Honor, we respectfully request the

18  90 day period within which to provide the Court details about

19  the victims, in particular, the identity and the amounts.

20      THE COURT:  All right.  Ms. Shroff, anything further

21  you wish to say?

22      MS. SHROFF:  Your Honor, I have no objection to this.

23  I am in no position to but I have an objection to the 36 month

24  sentence.  But I do wish to say Mr. Pastore's description of

25  wholesale attack on the loss guidelines makes it sound that the

1    defense has somewhat done something awry or amiss.  The loss

2    guidelines should be wholesaley attacked as have been noted by

3    Judge Rakoff and all the loss -- there is nothing about those

4    opinions that suggest that because the loss guidelines are on

5    the lower range they are somehow more reasonable or more

6    empirically sound.  So just so that the law is accurately

7    portrayed, Judge Rakoff's opinions do not say that the loss

8    guidelines are reasonable or the guideline reasonable.  I just

9    wanted that to be part of the record in this case.

10            THE COURT:  Well, let me say that I considered what

11   the parties had to say about the various cases that have

12   discussed the fraud guidelines.  And first of all, I don't

13   think Mr. Zdorovenin is similarly situated to any of the

14   defendants involved in those cases for a variety of reasons.

15   In some instances there's no question that the judge has been

16   motivated by the fact that the imposition of a guideline

17   sentence would result in what was effectively a life sentence

18   and undoubtedly that influenced what they had to say.

19            I have considered the arguments about the fraud

20   guidelines and taken them into account in my determination of

21   what's was an appropriate sentence balancing all the factors in

22   the case.  And as I've said, I've concluded that the

23   appropriate sentence here is 36 months.

24            Mr. Zdorovenin, is there anything further you wish to

25   say?

D14AAZDOS                    Sentence

1          THE DEFENDANT:  (In English)  Thank you.  No.

2          THE COURT:  Mr. Pastore, anything else for government?

3          MR. PASTORE:  I don't believe so.  I may have missed

4    it, your Honor, but is your Honor imposing the mandatory

5    special assessments on the two counts?

6          THE COURT:  Yes.  I actually haven't imposed sentence

7    yet.  I just told you what I intend to do.

8          MR. PASTORE:  Certainly, your Honor.  We have no

9    objection to the sentence as described.

10         THE COURT:  Mr. Zdorovenin, for the reasons I just

11   stated, it is the judgment of this Court that you be sentenced

12   to 36 months imprisonment.  You are ordered to pay a special

13   assessment in the amount of $200.  I am signing the consent

14   order of forfeiture which has been previously executed by the

15   parties and I will expect a proposed restitution order within

16   the next 90 days.

17         I believe there are open counts Mr. Pastore

18         MR. PASTORE:  The government now moves to dismiss any

19   open counts in this indictment against this defendant.

20         THE COURT:  That motion is granted.

21         Ms. Shroff, do you have any requests as to an

22   appropriate institution?

23         MS. SHROFF:  May I just have a second with my client?

24         THE COURT:  Yes.

25         (Pause)

D14AAZDOS                    Sentence

1      MS. SHROFF:  Your Honor, my client doesn't have any

2 family in the United States.  We do ask for a designation as

3 close to in the New York City area so that he has my offices

4 and his lawyer as a continued contact.

5      I would ask, your Honor, that if the Court could

6 possibly order that he receive -- and I know this might sound

7 odd -- but if he could receive whatever dental care -- he can

8 afford -- I know that my client would appreciate that.  He is

9 almost constantly in pain and regardless of the many requests

10 we've made to the Bureau of Prisons we haven't had much success

11 with getting him help

12      THE COURT:  What's the nature of his problem?

13      MS. SHROFF:  I think he has a receding gum in his

14 lower teeth and he has lost like his front four teeth which

15 make it difficult --

16      THE COURT:  All right.

17      MS. SHROFF:  It seems to be a rather painful state

18 of --

19      THE COURT:  All right.

20      MS. SHROFF:  Thank you.

21      THE COURT:  All right.  I do recommend to the Bureau

22 of Prisons that the defendant serve his remaining period of

23 incarceration in New York City metropolitan area.  And I ask

24 the Bureau of Prisons to address the dental problems that

25 counsel has referenced this afternoon.

D14AAZDOS                    Sentence

1      Mr. Zdorovenin, I am required to advise you of your

2 appeal rights.  You can appeal your conviction if you believe

3 that your guilty plea was unlawful or involuntary or there was

4 some other fundamental defect in the proceedings that was not

5 waived by your guilty plea.

6      You also have a statutory right to appeal your

7 sentence under certain circumstances with few exceptions.  And

8 a any notice of appeal must be filed within ten days of

9 judgment being entered into your case.  The judgment will

10 likely be entered on Monday.  Ms. Shroff will discuss you

11 whether or not you wish to file a notice of appeal.  If you are

12 not able to pay the cost of an appeal you may apply for leave

13 to appeal in forma pauperis.  If you request, the Clerk of the

14 Court will prepare and file a notice of appeal on our behalf.

15           anything further?

16      MR. PASTORE:  Nothing further from the government.

17 Thank you.

18                    (Adjourned )

19

20

21

22

23

24

25